AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
May 20, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ch DEPUTY

United States of America,

v.

Christopher Barret Johnson,

Defendant(s)

Case No. 2:26-mj-03063-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 5, 2026, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) | Possession with Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Ashley Allen*
*Complainant's signature*

Ashley Allen, TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 20, 2026

[signature]
*Judge's signature*

City and state: Los Angeles, California

Hon. Brianna Fuller Mircheff, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christopher Jones (x7383)

# AFFIDAVIT

I, Ashley Allen, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Christopher Barret JOHNSON for a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi): Possession with Intent to Distribute Fentanyl.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence in this matter, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I have been a Sworn Peace Officer in California since 2013. I have been employed by the Santa Monica Police Department since 2016. I have been assigned to the role of Police Detective for approximately four years. In 2025, I was deputized as a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"). I am currently assigned to DEA High Intensity Drug Trafficking Area Group 51 ("Task

Force”). As part of this Task Force, I investigate various narcotic crimes.

4. I have received numerous hours of formal classroom training in the investigation of narcotics and dangerous drugs from the Los Angeles County Sheriff Department. I have also received on-the-job training from other narcotics detectives, federal, state and local agents/agencies (Santa Monica Police Department, Los Angeles Police Department, DEA, and the Los Angeles County District Attorney's Office) recognized in the courts as experts in the field of narcotics investigations. I have participated in several narcotic investigations and have arrested numerous persons for violations related to illegal drug possession, use, sales, and trafficking.

5. As a result of my assignments and training, I have developed extensive knowledge regarding the manner and methods used by street, mid-level and major illegal drug traffickers in the furtherance of their illicit activities. I have spoken to informants, users, street dealers, mid-level and major distributors of illegal drugs and have learned the methods individuals use to operate their drug trafficking organizations.

6. Through the course of these investigations, I have been able to develop contacts with narcotic users, sellers, experts and informants, and have discussed with them the various aspects of use, sales, packaging and transportation of narcotics in Southern California.

## III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of police reports, I know that on or about May 5, 2026, Los Angeles Police Department ("LAPD") police officers Emmanuel Ramirez-Cuevas and Michael Burroughs were conducting patrol in the area of Wilshire Boulevard and Alvarado Street in Los Angeles, California, in a marked, black and white patrol vehicle. The area they patrolled was within the vicinity of MacArthur Park. MacArthur Park is in a sector of the city characterized by high rates of poverty. Many of the residents and visitors in the area are drug users, and MacArthur Park is a known location to purchase user-quantities of drugs, including methamphetamine and fentanyl, in open-air markets.

8. At approximately 10:20 p.m., the officers observed a white-colored BMW (the "BMW") lacking a front license plate, in violation of California Vehicle Code ("CVC") Section 5200(A), abruptly conduct a U-turn in front of them, in violation of CVC Section 22102. The LAPD officers conducted a traffic stop on the BMW. A photograph of JOHNSON is included below.



9. The officers exited their vehicle and approached the BMW. Officer Ramirez-Cuevas approached the driver's side window of the vehicle and contacted the sole occupant: JOHNSON. Upon

contact, Officer Ramirez-Cuevas noticed JOHNSON appeared very nervous. While speaking with JOHNSON, Officer Ramirez-Cuevas observed in plain view on the BMW's center console a plastic baggie containing an off-white residue, consistent in appearance with methamphetamine. Additionally, Officer Ramirez-Cuevas saw JOHNSON had two knives within his waistband.

10. Due to the presence of the suspected drugs and JOHNSON possessing knives on his person, Officer Ramirez-Cuevas ordered JOHNSON out of the vehicle. JOHNSON complied.

11. Officer Ramirez-Cuevas asked JOHNSON if he was in possession of anything illegal, and JOHNSON said that he was in possession of speed, which Officer Ramirez-Cuevas understood as street slang for methamphetamine.

12. The officers conducted a pat down search of JOHNNSON and found a plastic baggie containing an off-white residue consistent in appearance with methamphetamine from JOHNSON's left front pant pocket.

13. Officers also conducted a search of the BMW. Inside, the officers located a backpack in the rear seat that was partially open that contained: (1) plastic baggies containing an off-white residue resembling methamphetamine; (2) a plastic bag containing a chalky substance resembling fentanyl; (3) plastic baggies containing a chalky white substance resembling fentanyl; (4) a digital scale that had a white chalky residue resembling fentanyl on it; (5) empty plastic baggies; and (6) U.S. currency.

14. The officers also located a dish soap container that had a faulty lid inside of the BMW. Officer Ramirez-Cuevas unscrewed the lid and found additional plastic baggies containing a chalky substance resembling fentanyl.

15. In the center console of the BMW, the officers located U.S. currency in different denominations and a large amount of empty plastic baggies.

16. Based on the recovered contraband, the officers placed JOHNSON under arrest for violating California Health & Safety Code Section 11352(a) – Transportation or Sale of Controlled Substances.

17. The officers interviewed JOHNSON and advised him of his Miranda rights. When questioned about the drugs in the BMW, JOHNSON acknowledged that there were drugs inside of his car but claimed that they belong to a female using the moniker of "Red," and that he takes care of drugs for his friend. JOHNSON also acknowledged that he works for an organization called People Assisting the Homeless ("PATH").

18. PATH is a California-based nonprofit organization dedicated to ending homelessness for individuals, families and communities. Founded in 1983, it has grown to operate in over 150 cities, offering services such as street outreach, housing navigation, interim housing, rapid re-housing and permanent supportive housing to help people transition from the streets to stable homes. PATH participates in harm reduction service programs and serves as a vendor in distributing syringes, including in the MacArthur Park area.

19. Subsequent laboratory analysis confirmed that the drugs seized from JOHNSON's car and person included: (1) at least 142 grams of a mixture or substance containing a detectable amount of fentanyl; and (2) at least 45.97 grams of methamphetamine.

20. Based on my training and experience, the amount of fentanyl and methamphetamine possessed by JOHNSON is not consistent with personal use. Additionally, based on my training experience, I know that the presence of a digital scale, numerous plastic baggies, the way the fentanyl and methamphetamine was packaged, and the multiple denominations of U.S. currency found in the vehicle are consistent with the possession of narcotics with intent to distribute.

## IV. CONCLUSION

21. For all of the reasons described above, there is probable cause to believe that JOHNSON has committed a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi): Possession with Intent to Distribute Fentanyl.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of May 2026.

[signature]

HONORABLE BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE